UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Christine DeYoung,

    Plaintiff,   Case No. 15-cv-11877

v.         Judith E. Levy
         United States District Judge
Lowe's Home Centers, LLC,
         Mag. Judge Anthony P. Patti
    Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14] AND DENYING DEFENDANT'S MOTION IN LIMINE [18] AS MOOT**

Before the Court is defendant's unopposed motion for summary judgment. (Dkt. 14.) For the reasons set forth below, defendant's motion is granted.

### I. Background

Plaintiff Christine DeYoung worked for defendant Lowe's Home Centers as a Pricing/Signage Coordinator until defendant terminated her employment in December 2014. (Dkt. 1 at 3-6.) Plaintiff started work as one of three pricing coordinators in defendant's Ypsilanti, Michigan store in 2000. (Dkt. 14-2 at 5, 7.) Defendant eliminated one

of the three pricing coordinator positions around 2011. (*Id.* at 7.) After almost eleven years as a pricing coordinator, plaintiff switched to a customer-service position because she had difficulty keeping up with the pricing coordinator responsibilities. (*Id.*) While plaintiff was working in customer service, defendant eliminated another pricing coordinator position, leaving one coordinator for the store. (*Id.*)

In 2013, after over a year in customer service, plaintiff decided to move back to her pricing coordinator position, and knew that she would be the only coordinator. (*Id.*) Plaintiff had difficulty keeping up with the demands of the position, and was issued a warning in May 2014 for poor performance. (Dkt. 14-4.) In early June 2014, plaintiff received another warning, again for failure to complete her assignments. (Dkt. 14-5.) Later that month, defendant attempted to help plaintiff learn to use the computer systems so that she could complete her computer-related tasks, with which she struggled. (Dkt. 14-7.) And in July 2014, plaintiff received a "final notice," citing her poor performance. (Dkt. 14-6.)

In response to the final warning, plaintiff contacted defendant's Employee Relations Department to complain that defendants "[were]

trying to get rid of [plaintiff] because of [her] pay and time with the company." (Dkt. 14-7.) The Employee Relations Department investigated plaintiff's claims and found that her "allegations [were] unsupported." (*Id.*) The investigation report noted that of the 162 employees working at the store, 49 were paid at a greater hourly rate than plaintiff, and that 22 store employees had worked for defendant for more than ten years. (*Id.*)

Plaintiff alleges that, at some point before she was fired, Assistant Store Manager Stacey Lozon and Store Manager Holly Cooper each made comments to plaintiff about her retirement. (Dkt. 14-2 at 35)

In November 2014, plaintiff failed to complete her assignments for defendant's "black Friday" sale. (*Id.* at 31.) Shortly thereafter, in early December 2014, defendant terminated plaintiff's employment because of her "poor job performance." (Dkt. 14-9.) Plaintiff was sixty-six years old when she lost her job. Defendant replaced plaintiff with a forty-year old woman, Sheila Webb. (Dkt. 14-10.)

3

Plaintiff then filed this suit, alleging that defendant discriminated against her based on her age and gender[1], and that defendant retaliated against her for complaining to the Employee Relations department, in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). MICH. COMP. LAWS 37.2201 *et seq*.

## II. Standard of Review

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts

---

[1] This claim was brought as "gender discrimination." Although plaintiff did not respond to defendant's motion for summary judgment, it appears to the Court that it may be a garden-variety sex discrimination claim, although issues related to gender may also be involved. In the interest of clarity "'Sex' refers to the classification of individuals as male or female at birth, based on biological factors" whereas "'Gender'" refers to the socially-constructed norms associated with a person's sex." Yvette K. W. Bourcicot & Daniel Hirotsu Woofter, *Prudent Policy: Accommodating Prisoners with Gender Dysphoria*, 12 STAN. J. C.R. & C.L. 283, 288 (2016).

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

### III. Analysis

#### A. Sex Discrimination

"An employment discrimination plaintiff can establish [her] claim of unlawful discrimination under Michigan's Elliot-Larsen Civil Rights Act either (1) by producing direct evidence of discrimination or (2) by presenting a prima facie case of discrimination in accordance with the *McDonnell Douglas/Burdine* framework." *Millner v. DTE Energy Co.*, 285 F. Supp. 2d 950, 965 (E.D. Mich. 2003) (collecting cases). Michigan courts use the *McDonnell Douglas* framework in age and sex discrimination cases. *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63 (2001).

Direct evidence is that, "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 132 (2003). Plaintiff has not produced any direct

5

evidence of sex discrimination. Thus, plaintiff must establish a prima facie case. *Id.* at 134.

To establish a prima facie case, plaintiff must show that "(1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Hazle*, 464 Mich. at 463.

The parties do not dispute that plaintiff belongs to a protected class, that she suffered an adverse employment action, or that she was qualified for her position. But plaintiff has not established a prima facie case of sex discrimination because she has not shown that "she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012).

First, plaintiff cannot establish a prima facie case of sex discrimination because she was replaced by a female, which she set forth in her deposition. (Dkt. 14-2 at 34.) Defendant also submitted Store Human Resources Manager Sara Lamparksi's affidavit, which states that plaintiff was replaced by a female over forty-years old. (Dkt.

6

14-10.) Second, plaintiff has not identified any similarly-situated male employees who were treated more favorably.

Accordingly, the Court grants summary judgment to defendant on plaintiff's ELCRA sex-discrimination claim.

## B. Age Discrimination

Plaintiff may rely on direct or circumstantial evidence to establish age discrimination in violation of ELCRA. *Marsh v. E. Associated Estates Realty*, 521 F. App'x 460, 466 (6th Cir. 2013). Plaintiff claims that store managers asked her about her retirement plans "on multiple occasions." (Dkt. 1 at 4.) During her deposition, plaintiff identified the two individuals who allegedly ask her about retirement: Stacey Lozon and Holly Cooper. (Dkt. 14-2 at 34-35.) Both Stacey Lozon and Holly Cooper submitted affidavits stating that they never asked plaintiff about her retirement. (Dkts. 14-11, 14-12.)

But even if Lozon and Cooper did ask plaintiff when she was going to retire, such remarks would not be sufficient direct evidence of age discrimination. "In age-discrimination cases, allegedly discriminatory remarks are evaluated by considering four factors: '(1) whether the statements were made by a decision-maker or by an agent

within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.'" *Diebel v. L & H Res., LLC*, 492 Fed. App'x 523, 527 (6th Cir. 2002) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002)). "No single factor is dispositive; they must be evaluated as a whole." *Id.*

Here, even assuming Lozon and Cooper were decision-makers, plaintiff has not shown that asking about her retirement was at all related to the termination of her employment; nor has plaintiff shown that the remarks were anything more than "vague, ambiguous[,] or isolated." *Id.* Thus, plaintiff has not produced direct evidence of age discrimination.

Because plaintiff has not produced direct evidence of discrimination, she must rely on the *McDonnell Douglas* framework. And, even assuming that plaintiff can establish a prima facie case, her claim of age discrimination fails.

When a plaintiff establishes a prima facie case of discrimination, "the burden shifts to the employer to articulate some legitimate

8

nondiscriminatory reason for the employment decision." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642 (6th Cir. 2012). If "the employer carries this burden, the burden of production shifts back to the plaintiff to show that the legitimate reasons offered by the employer were not its true reasons, but rather were pretext for unlawful discrimination." *Id.* at 654.

Here, defendant satisfied its burden by setting forth its legitimate nondiscriminatory reasons for terminating plaintiff's employment. Defendant produced evidence that plaintiff did not perform her job duties, that defendant warned her of her poor performance several times in writing (Dkts. 14-4, 14-5, 14-6, 14-7, 14-8, 14-9), that defendant provided additional training (Dkt. 14-8), but that plaintiff did not improve her job performance. (Dkt. 14-9.)

To support a finding of pretext, plaintiff must show that "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Diebel,* 492 F. App'x at 531 (quoting *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 493 (6th

9

Cir. 2010)). And "prextext is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Id.* (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).

Here, plaintiff simply has not produced any evidence suggesting that defendant's stated reasons for terminating her employment were anything but legitimate and nondiscriminatory.

Accordingly, summary judgment is granted to defendant on plaintiff's ELCRA age-discrimination claim.

### C. Retaliation

Plaintiff next claims that defendant "forced her to perform tasks that were not previously a part of her job" in retaliation for contacting defendant's Employee Relations Department after plaintiff received a final warning. (Dkts. 1 at 8, 14 at 16.)

"A plaintiff alleging retaliation in violation of the ELCRA must establish the following elements of a prima facie case: (1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to

10

the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." *In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007). And "[t]o establish causation, the plaintiff must show that [her] participation in activity protected by the ELCRA was a significant factor in the employer's adverse employment action, not just that there was a causal link between the two." *Id.* (quoting *Barrett v. Kartland Cmty. Coll.*, 245 Mich. App. 306, 315 (2001)). Here, even assuming plaintiff can satisfy the first three factors, she has not shown any causal connection between her complaint to Employee Relations and any additional job duties assigned to her.

Plaintiff admitted in her deposition that defendant assigned her additional job duties because one of her co-workers moved to another department within the store. (Dkt. 14-2 at 38.) Moreover, defendant produced the written warnings issued to plaintiff for poor performance, which reflect additional job duties assigned to plaintiff before she complained to Employee Relations. (Dkts. 14-5, 14-6.) Thus, plaintiff failed to produce evidence suggesting a connection between her protected activity and her termination. In contrast, defendant produced

evidence showing that plaintiff's additional job duties were unrelated to her Employee Relations complaint. Plaintiff thus failed to establish a prima facie case for retaliation.

Accordingly, summary judgment is granted to defendant on plaintiff's ELCRA retaliation claim.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment (Dkt. 14) is GRANTED and the case is DISMISSED WITH PREJUDICE.

Defendant's motion in limine (Dkt. 18) is DENIED as moot.

IT IS SO ORDERED.

Dated: February 3, 2017
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 3, 2017.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager

12